UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOURELAIN MEHANNA,
REDA BARAKAT,

Plaintiffs,

v.

MICK DEDVUKAJ, et al,

Defendants.
_____/

Hon. Victoria A. Roberts

Case No. 09-14510

## ORDER

**I.     Introduction**

This matter is before the Court on Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment. (Doc. 15).

Defendants' motion is GRANTED.

**II.    Background and Procedural History**

On December 10, 2009, Nourelain Mehanna and Reda Barakat filed suit asking the Court to declare that Barakat's I-130 relative visa petition ("petition"), filed on his behalf by his mother, Mehanna, is valid. Mehanna, a citizen of Lebanon and a lawful permanent resident of the U.S., filed the petition on her son's behalf on April 13, 2000. Mehanna classified Barakat as an unmarried, adult child of a permanent resident, and the U.S. Citizenship & Immigration Service (USCIS) approved the petition on November 15, 2001.

On December 25, 2006, Barakat married a U.S. citizen. Because of his

marriage, Barakat was admitted to the U.S. as a conditional permanent resident on August 9, 2007. Barakat's marriage was annulled on June 12, 2008. Barakat then received notification that Detroit's USCIS intended to terminate his conditional residency.

Barakat responded to the notice, and admitted that his marriage was annulled. He also filed an application for adjustment of status based on the petition previously filed by Mehanna.

The USCIS terminated Barakat's conditional permanent residency on April 30, 2009. The USCIS also denied Barakat's request for adjustment of status for an unmarried, adult child of a permanent resident, stating the petition was automatically revoked when Barakat got married. On August 13, 2009, Barakat received a notice to appear, which informed him that the Department of Homeland Security (DHS) had initiated removal proceedings against him.

Barakat asks the Court to declare his I-130 petition valid because, under Michigan law, an annulment voids a marriage *ab initio* (from the beginning). Barakat believes the USCIS should treat him as though he never married because annulments cancel the marriage as though it never existed, removing the reason for the revocation.

## III.   Standard of Review

Defendants bring their motion under Fed. R. Civ. P. 12(b)(1), claiming that the Court lacks subject matter jurisdiction to review this matter. To defeat a motion to dismiss for lack of subject matter jurisdiction, "the plaintiff must show that the complaint 'alleges a claim under federal law, and that the claim is substantial.'" *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir.

2002) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)). The plaintiff "will survive the motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint." *Id.* (quoting *Musson*, 89 F.3d at 1248). Where federal question jurisdiction is alleged, the federal question must be presented on the face of the complaint. *See Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475 (1998).

If the attack on jurisdiction is a facial attack on the complaint, the court must accept the allegations in the complaint as true and construe them in a light most favorable to the non-moving party. *United States v. A.D. Roe Co., Inc.,* 186 F.3d 717, 721-722 (6th Cir 1999). If the attack is factual, however, the court may weigh evidence and resolve factual disputes. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "[A] trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

**IV.   Analysis**

   **A.   Source of Subject Matter Jurisdiction**

Defendants argue the Court has no subject matter jurisdiction over this claim, and that it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

In the Complaint, Plaintiffs allege jurisdiction based on the Declaratory Judgment Act (the "Act"), 28 U.S.C. § 2201. However, the Act does not confer an independent source of federal subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950); *Schilling v. Rogers,* 363 U.S. 666, 677 (1960); *Heydon v. MediaOne of Southeast Michigan, Inc.,* 327 F.3d 466, 470 (6th Cir. 2003). It is well

established that "[a] plaintiff cannot circumvent the well-pleaded complaint rule by seeking a declaratory judgment . . . if the complaint itself would not otherwise state a federal question." *Heydon,* 327 F.3d at 470. Therefore, a court must already have a source of jurisdiction before it can rely on the Act to grant a remedy. *Id.*

In Plaintiffs' response to the motion to dismiss, they allege two additional sources of jurisdiction: (1) the Administrative Procedure Act (APA), 5 U.S.C. § 702; and (2) the Federal Question jurisdiction statute, 28 U.S.C. § 1331. Like the Act, the APA is not an independent source of jurisdiction of the federal courts. *Califano v. Sanders,* 430 U.S. 99, 105-107 (1977). However, generally, "[j]urisdiction to review agency action under the APA is found in 28 U.S.C. § 1331." *Chrysler Corp. v. Brown,* 441 U.S. 281, 317 n. 47 (1979); *see also Hamdi ex rel Hamdi v. Napolitano,* 620 F.3d 615, 624 (6th Cir. 2010). Thus, the APA and § 1331, if alleged in the Complaint, would ordinarily give this Court subject matter jurisdiction to review the Plaintiffs' action. While a response to a motion is not the proper place to assert jurisdiction, Plaintiffs' claim is doomed even if the Court accepts Plaintiffs' response to the motion as a proper amendment of the Complaint.

### B. Petitions for Unmarried, Adult Children Under the INA

Under Section 1154 of the Immigration and Nationality Act (INA), a lawful permanent resident may petition the Attorney General for a visa for an unmarried, adult child. 8 U.S.C. § 1154(a)(B)(i)(I). Once approved, the Secretary of Homeland Security (Secretary) may revoke the petition under § 1155, which states:

> The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be

effective as of the date of approval of any such petition.

Although § 1154 specifically refers to the Attorney General, while § 1155 specifically refers to the Secretary of Homeland Security, the Homeland Security Act of 2002 instructs that "all statutory references to the Attorney General in immigration statutes are construed as referencing the appropriate DHS official." *Hamdi,* 620 F.3d at 621 n. 4.

The DHS enacted federal regulations, including 8 C.F.R. § 205, to implement the revocation power authorized in § 1155. This regulation provides for automatic revocations, *see* 8 C.F.R. § 205.1, and revocations on notice, *see id.* at § 205.2. According to 8 C.F.R. § 205.1(a)(3)(i)(I), "the approval of a petition . . . is revoked . . . upon the marriage of a person accorded status as a son or daughter of a lawful permanent resident alien under section 203(a)(2) of the Act." This is the regulation under which Barakat's petition was revoked.

Plaintiffs claim that Barakat's petition was improperly revoked because his marriage must be treated as though it never existed. Defendants say that the Court has no jurisdiction to review the revocation because Congress stripped federal courts of jurisdiction to review discretionary decisions of the Secretary. Defendants are correct.

### 1. This Court Lacks Jurisdiction to Review Discretionary Decisions of the Secretary of Homeland Security

Under 8 U.S.C. § 1252(a)(2)(B)(ii), decisions committed to the discretion of the Secretary are not subject to judicial review. Title 8 U.S.C. § 1252(a)(2)(B) states:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland

Security, other than the granting of relief under section 1158(a) of this title.

The subchapter referenced in this statute is entitled "Immigration," and includes 8 U.S.C. §§ 1151-1381. *Kucana v. Holder,* 130 S. Ct. 827, 832 n.3 (2010). The statute under which Barakat's petition was revoked is within this subchapter. Therefore, to decide whether the Court has subject matter jurisdiction, it must decide whether the revocation of Barakat's petition is a decision within the discretion of the Secretary.

## 2. Petition Revocation Decisions Are Discretionary

Defendants rely on the statute which authorizes the Secretary to revoke petitions, 8 U.S.C. § 1155. Defendants say that this statute specifies that the decision to revoke is within the discretion of the Secretary.

Plaintiffs rely on the regulation under which Barakat's petition was automatically revoked, 8 C.F.R. § 205.1(a)(3)(i)(I). Plaintiffs say that the regulation is not discretionary because it calls for an automatic revocation; therefore, it does not fall within the jurisdiction stripping statute of § 1252.

Plaintiffs reliance on the regulation is misguided; the regulation under which Barakat's petition was revoked was promulgated to implement 8 U.S.C. § 1155.

Eight U.S.C. § 1155 provides:

> The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be effective as of the date of approval of any such petition.

To implement this statutory revocation power, the Secretary enacted 8 C.F.R. § 205. *See Lockhart v. Napolitano,* 573 F.3d 251, 261 (6th Cir. 2009) (discussing revocation of visas for immediate-relative status); *Pierre v. U.S. Attorney General,* 300 Fed. Appx.

870, 872 (11th Cir. 2008) (stating that § 205.1 was promulgated pursuant to 8 U.S.C. § 1155).  Therefore, any revocation that occurs pursuant to 8 C.F.R. § 205.1 must be authorized under the power specified in 8 U.S.C. § 1155.

The Sixth Circuit has yet to address whether a revocation under § 1155 is discretionary and beyond judicial review.  However, the majority of circuits which have addressed this issue hold that it is.  *See Ghanem v. Upchurch,* 481 F.3d 222, 223 (5th Cir. 2005); *Abdelwahab v. Frazier,* 578 F.3d 817, 821 (8th Cir. 2009);*Sands v. DHS,* 308 Fed. Appx. 418, 420 (11th Cir. 2009); *Jilin Pharmaceutical USA, Inc. v. Chertoff,* 447 F.3d 196, 205 (3rd Cir. 2006); *El-Khader v. Monica,* 366 F.3d 562, 568 (7th Cir. 2004). *But see Ana Int'l. v. Way,* 393 F.3d 886 (9th Cir. 2004).

The Sixth Circuit examined the jurisdiction stripping provision of § 1252 in other instances, and held that it "applies to *all* discretionary decisions enumerated in the relevant subchapter of Title 8." *Randhawa v. Ashcroft,* 121 Fed. Appx. 612, 614 (6th Cir. 2005) (citing *CDI Information Services, Inc. v. Reno,* 278 F.3d 616, 620 (6th Cir. 2002)).  This includes the statute at issue here, § 1155.  However, the Supreme Court recently cautioned that there exists a "presumption favoring interpretations of statutes [to] allow judicial review of administrative action." *Kucana,* 130 S. Ct. at 837 (quoting *Reno v. Catholic Social Serv. Inc.,* 509 U.S. 43- 63-64 (1993). Thus, a court may find that "Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." *Kucana,* 130 S. Ct. at 837.

In deciding whether § 1155 is specified to be within the discretion of the Secretary, the Court must first look to the plain language of the statute.  *Mwarasu v.*

*Napolitano,* 619 F.3d 545, 549 (6th Cir. 2010). If the text of the statute is unambiguous, the Court will look no further to determine its meaning. *Id.* (citing *Chrysler Corp. v. Comm'r of Internal Rev*enue, 436 F.3d 644, 654 (6th Cir. 2006)). However, if upon a "natural reading of the full text" the meaning of the statute is not clear, the Court must consider the "common-law meaning of the statutory terms." *Hamdi ex rel Hamdi v. Napolitano,* 620 F.3d 615, 621 (6th Cir. 2010) (internal quotations omitted). Finally, if the statutory language is unclear, the Court must look to legislative history. *Id.*

Upon a natural reading of the text of this statute, the Court finds that the plain meaning is clear: the Secretary has discretion to revoke approved petitions, at any time, for any reason, judged to be sufficient cause. The statute provides:

> The Secretary of Homeland Security *may, at any time, for what he deems to be* good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be effective as of the date of approval of any such petition.

(emphasis added).

First, the statute says that the Secretary "may" revoke a petition. "'May' suggests discretion." *Zacdvydas v. Davis,* 533 U.S. 678, 697 (2001); *see also Kucana,* 130 S. Ct. at 837 n.13 (noting that "asylum applicants might fall within § 1252(a)(2)(B)(ii)'s jurisdictional bar because a statutory provision . . . specifies that "the Attorney General *may* grant asylum" but for a statutory exception for asylum applications).

Next, the statute says that the petition may be revoked "at any time." This also suggests discretion by granting the decision of when to revoke a petition with the Secretary.

Finally, although the conditions for revocation seem limited to situations where

there is "good and sufficient cause," the decision of what constitutes good and sufficient cause appears to be wholly within the Secretary's discretion, as well, because it is what he "deems" it to be. The term "deem" is not defined in the INA, *see* 8 U.S.C. § 1101, but the common meaning of "deem" is "to consider, think, or judge." Black's Law Dictionary (9th ed. 2009).

The Secretary judges whether good and sufficient cause exists to revoke a petition, has the choice to revoke it or not, and may do so at any time, or not at all. As a whole, the plain language of the statute indicates that the revocation of an approved petition is within the discretion of the Secretary. This interpretation comports with the majority of courts which have answered this question, as noted above. *See e.g. Jilin Pharmaceutical USA, Inc.,* 447 F.3d at 203; *Hanif v. Dept. of Homeland Security,* 472 F.Supp.2d 914 (E.D. Mich. 2007); *Global Export/ Import Link, Inc. v. United States Bureau of Citizenship and Immigration Services,* 423 F.Supp.2d 703, 705 (E.D. Mich. 2006); *Mohammad v. Napolitano,* 680 F.Supp.2d 1, 7 (D. D.C. 2009); *Systronics Corp. v. Immigration and Naturalization Service,* 153 F.Supp.2d 7, 10-11 (D. D.C. 2001).

The reasoning of the sole circuit which reached a different conclusion is not persuasive. In *Ana International v. Way,* 393 F.3d 886 (9th Cir. 2004), the Ninth Circuit found that the jurisdiction stripping statute did not bar review of visa revocations under § 1155. According to that court*,* § 1155 has phrases which suggest discretion, but "[t]o put a purely subjective construction on the statute is to render the words 'good and sufficient cause' meaningless." *Id.* at 893. The court determined the meaning of "good and sufficient cause" by considering Ninth Circuit and Board of Immigration Appeals precedent. The court reasoned that, because its earlier cases established that "good

and sufficient cause" was a meaningful legal standard, it was precluded from finding that the statute gave the Secretary complete discretion to revoke. *Id.* at 894.

The Ninth Circuit's reasoning is not persuasive for three reasons. First, the Ninth Circuit's examination of "good and sufficient cause" ignores the preceding, modifying phrase "for what he deems to be." It is clear that the statute puts the determination of what constitutes good and sufficient cause solely within the discretion of the Secretary. *See Jilin Pharmaceutical,* 447 F.3d at 203-04; *Ghanem,* 481 F.3d at 224-25.

Second, that the court itself developed a legal standard under which to evaluate whether "good and sufficient cause" exists does not necessarily mean that Congress intended the Secretary's discretion to be measured against this standard. In fact, a reading of the full text of the relevant statutes indicates just the opposite. From a plain reading of § 1155, it appears that Congress intended to leave the determination of what constitutes "good and sufficient cause" to the judgment of the Secretary. And, by promulgating the jurisdiction stripping statute, Congress made clear that it does not wish federal courts to second guess the Secretary's judgment. By placing undue weight on the phrase "good and sufficient cause," without adequately considering the preceding, modifying phrase "for what he deems to be," the Ninth Circuit's interpretation contravenes Congress' intent.

Third, the Ninth Circuit's reasoning is at odds with Sixth Circuit decisions which discuss whether Congress intended a statute to confer discretion. In *Valenzuela-Alcantar v. Immigration and Naturalization Service,* 309 F.3d 946, 949-50 (6th Cir. 2002), the Court decided that a finding of "extreme hardship" under § 244 of the Immigration and Nationality Act was discretionary. In its determination, the Court

examined the language of the statute, which said "deportation would, in the opinion of the Attorney General, result in extreme hardship." 8 U.S.C. § 1254(a)(1) (repealed 1996). The Court stated the "language of the statute expressly commits" the determination to the discretion of the Attorney General. *Valenzuela-Alcantar*, 309 F.3d at 949.

The language "in the opinion of" is similar to the language used in § 1155, "for what he deems to be." Although the language is not identical in form, it has similar meaning; in § 1155, it means that the Secretary decides what is good and sufficient cause, and in § 244, it means that the Attorney General decides what is extreme hardship. Like "good and sufficient cause" in § 1155, "extreme hardship" in § 244 could be viewed as a legal standard; however, the Sixth Circuit found that the preceding phrase made it clear that it was a discretionary determination. As such, the Court found it unreviewable under the jurisdiction stripping statute. *Id.* at 949-50. (The jurisdiction stripping statute stated: "there shall be no appeal of any discretionary decision under section . . . 244 . . . of the Immigration and Nationality Act." IIRIRA § 308(b)(7)).

Additionally, in *Kwak v. Holder,* 607 F.3d 1140 (6th Cir. 2010), the Sixth Circuit considered whether 8 U.S.C. § 1252(a)(2)(B)(ii) precluded review of a decision to deny a motion for a continuance because the determination was made discretionary by 8 C.F.R. § 1003.29. The Court held that the jurisdiction stripping statute does not bar review of determinations made discretionary only by regulation, instead of by statute. There, the issue was different because the Court was examining a regulation, but the Court indicated, in dicta, that the language of the regulation at issue specified discretion. This regulation provides, "The immigration judge may grant a motion for continuance for

good cause shown." 8 C.F.R. § 1003.29.

When compared to the statute at issue here, it is clear that § 1155 contains language indicating discretion in a much clearer fashion than the regulation the Sixth Circuit reviewed in *Kwak*. Further, the regulation says "for good cause shown," which is very similar to the language of § 1155, "good and sufficient cause." Because the regulation used the word "may" the Sixth Circuit found that the regulation specified the decision was discretionary in nature, despite the "for good cause shown" language. Thus, the Sixth Circuit has indicated that § 1155 is discretionary, despite the "good and sufficient cause" language heavily relied on by the Ninth Circuit.

The Court finds that 8 U.S.C. § 1155 specifies that the decision to revoke an approved petition is within the discretion of the Secretary, and overcomes the presumption favoring an interpretation of a statute to allow judicial review of administrative action.

### 3. A Regulation May Not Supplant Discretion Specified by Congress

Plaintiff argues that although a decision to revoke a petition pursuant to § 1155 made under 8 C.F.R. §205.2 (revocation on notice) is discretionary, a revocation made under the provisions of 8 C.F.R. § 205.1 (automatic revocation) is not. However, the *regulation* under which Barakat's petition was revoked is not relevant to the determination of whether the *statute* granting authority to revoke is discretionary. His argument is foreclosed by the Supreme Court's decision in *Kucana v. Holder,* 130 S. Ct. 827 (2010).

In *Kucana,* the Supreme Court considered whether the jurisdiction stripping statute, § 1252(a)(2)(B), applies to determinations made discretionary by the Secretary

through regulation. It held that the words of the jurisdiction stripping statute itself "refer to statutory, but not regulatory, specifications." *Kucana,* 130 S. Ct. at 831. As the Court noted, to allow interpretation of the jurisdiction stripping statute to depend on federal regulations would allow the Secretary the ability to preclude the review of any actions under the relevant subchapter that the Secretary commits to discretion by regulation. *See id.* at 835. Thus, the Court held that 8 U.S.C. § 1252(a)(2)(B) precluded judicial review of determinations of the Secretary made discretionary by statute, but not those made discretionary by regulation. *Id.* at 831.

Following this logic, it is reasonable to conclude that a regulation may not remove discretion where Congress has authorized it. That the revocation is made automatic under the regulations implementing § 1155, does not preclude the application of the jurisdiction stripping statute if the Court determines § 1155 specifies that decisions to revoke petitions are within the discretion of the Secretary. Additionally, the Plaintiffs' argument necessarily implies that an automatic revocation cannot be discretionary; however, the promulgation of the regulation is simply an exercise of the Secretary's discretion to revoke under § 1155.

### 4. Failure to Exercise Discretion and Errors of Law

To the extent that Plaintiffs suggest that an automatic revocation is reviewable because it is a *failure* to use any discretion at all, instead of an invalid use of discretion, the Court finds this argument misguided. The regulation itself is a exercise of the Secretary's discretion by setting out scenarios when, in the Secretary's judgment, a petition will be revoked. That the revocation is automatic pursuant to regulation means only that the Secretary intended to exercise his discretion to revoke some petitions upon

the occurrence of certain conditions, without the requirement that notice be given to petition holders.

However, though Congress stripped federal courts of jurisdiction to review discretionary decisions of the Secretary, Congress carved out an exception for constitutional claims or errors of law. If the Plaintiffs believe that an automatic revocation is a failure to exercise discretion amounting to an error of law, there appears to be some authority, though not binding on this court, that such a challenge may be heard in the federal courts. *See, e.g. Iglesias v. Mukasey,* 540 F.3d 528 (7th Cir. 2008) (reviewing for legal error denial of motion to reopen though the court lacked jurisdiction over a claim of abuse of discretion).

However, even if Plaintiffs alleged a failure to exercise discretion which constituted an error of law, this Court still lacks subject matter jurisdiction. *See* 8 U.S.C. § 1252(a)(2)(D) (restoring jurisdiction to review constitutional claims and errors of law by an "appropriate *court of appeals*").

### 5. Revocation of a Petition Based on a Voided Marriage

To the extent Plaintiffs allege that a revocation of the visa petition based on a marriage that is void as though it never existed is an error of law, this Court lacks jurisdiction for the same reason discussed above.

### 6. This Court Lacks Jurisdiction Under the APA

Plaintiffs allege that this Court has subject matter jurisdiction pursuant to the APA. Under the APA, "[a] person suffering a legal wrong because of agency action, or

adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

It is unnecessary for the Court to determine whether review of the revocation is permitted under the APA because 8 U.S.C. § 1252(a)(2)(B)(ii) strips the Court's subject matter jurisdiction entirely. *See CDI Info. Services,* 278 F.3d at 620 n.2; 8 U.S.C. § 1252(a)(2)(B)(ii) ("*Notwithstanding any other provision of law* (statutory or nonstatutory), . . . no court shall have jurisdiction . . . ").

The Court finds no basis for subject matter jurisdiction; therefore, Defendants' motion is GRANTED and Plaintiffs' claim is dismissed.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: November 30, 2010

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 30, 2010.<br><br>s/Linda Vertriest<br>Deputy Clerk |